[Cite as *State v. Bowling*, 2025-Ohio-2272.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-04-061 |
| | : | OPINION AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 6/30/2025 |
| WILLIAM G. BOWLING, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-10-1547


Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Herdman, Summers, Revelson & Cesta, Joseph A. Cesta; and Schiavone Law Firm and Frank J. Schiavone IV, for appellant.


## O P I N I O N


**BYRNE, P.J.**

{¶ 1} William G. Bowling appeals from his sexual battery conviction in the Butler County Court of Common Pleas. Bowling contends that he did not enter a knowing,

intelligent, and voluntary guilty plea, that his trial counsel provided deficient performance, and that his sentence was contrary to law. For the reasons discussed below, we find these arguments meritless and affirm.

## I. Factual and Procedural Background

{¶ 2} In October 2023, a Butler County grand jury indicted Bowling on four counts of sexual battery in violation of R.C. 2907.03(A)(5), all of which were third-degree felonies. The indictments stemmed from allegations that Bowling engaged in sexual conduct with his adopted child ("the victim")[1] between 2017 and 2022.

## A. The Plea Form

{¶ 3} Bowling and the State subsequently negotiated a plea agreement. In February 2024, the parties entered this agreement into the record by means of a "GUILTY PLEA & Jury Waiver" form ("the plea form"). The plea form stated that Bowling agreed to enter a guilty plea to Count Three of the indictment. In return, the State agreed to dismiss the remaining three counts.

{¶ 4} Relevant to this appeal, the plea form included the following advisement about postrelease control:

**Post Release Control:** In addition, a period of supervision by the Adult Parole Authority after release from prison is (**mandatory**/optional) in this case. If I am sentenced to prison for ANY felony sex offense, after my prison release I will have mandatory post release control of 5 years under conditions determined by the Parole Board. If I am sentenced to prison for a felony 1, I will have mandatory post release control up to 5 years, but not less than 2 years. If I am sentenced to prison for a felony 2, I will have mandatory post release control up to 3 years, but not less than 18 months. If I am sentenced to prison for a felony 3 that is an offense of violence, I will have mandatory post release control up to 3 years, but not less than 1 year. If I receive a sentence to prison for a felony 3, 4, or 5, I may be given up to 2 years of post release control.

---

1. We use a nameless identifier for purposes of protecting the victim's identity and for improving the readability of the opinion. See *The Supreme Court of Ohio Writing Manual*, § 16, at 115 (3d Ed. 2024).

If I violate any post release control rule or condition, I can receive a more restrictive sanction while I am under post release control and increased duration of supervision or control up to the maximum term. If I violate conditions of supervision while under post release control, the Parole Board can return me to prison for up to nine months for each violation up to a maximum of ½ my original stated prison term, even though I have already served the entire stated prison term imposed upon me by this Court. If the violation is a new felony, I could receive a prison term of the greater of one year or the time remaining on post release control, in addition to any other prison term imposed for the new offense.

{¶ 5} Bowling, his attorney, and the prosecutor all signed the plea form.

**B. The Plea Hearing**

{¶ 6} On May 22, 2024, Bowling, his attorneys, and the State appeared before the court for a change of plea hearing.

{¶ 7} At the hearing, Bowling repeatedly asserted that he had reviewed the plea form and had reviewed it with his attorneys. Furthermore, Bowling agreed with the court's assertion that he understood and agreed "to everything contained" in the plea form.

{¶ 8} The court orally informed Bowling of the maximum sentence on Count Three. Specifically, the court informed Bowling that he could receive a maximum sentence of 60 months in prison and a $10,000 fine. The court further advised Bowling as to the imposition of mandatory postrelease control as follows:

> [The Court]: Upon your release, you will be under supervision, what is called, post-release control for a maximum period of five years. If you violate the post-release control sanctions, the parole authority could return you to prison and require that you serve more time in prison up to one-half of your original sentence on one or more post-release control violations.
>
> Do you understand that information?
>
> Bowling: Yes, Your Honor.

The court repeated this information and Bowling once again confirmed he understood the court's advisement.

{¶ 9} The court then reviewed the constitutional trial rights Bowling was waiving by pleading guilty. Bowling indicated he understood those rights and wished to waive

those rights.

{¶ 10} For the purpose of the court finding facts in support of the plea, Bowling and the State stipulated to the facts alleged as to Count Three in the Bill of Particulars.

{¶ 11} Afterwards, the court found that Bowling understood the charge, the possible penalties for pleading guilty, and the constitutional trial rights he was waiving, and that he had made a knowing, intelligent, and voluntary plea. The court accepted Bowling's guilty plea and found him guilty.

{¶ 12} The court ordered a presentence investigative report and further ordered that Bowling be evaluated for the "CCC" sex offender program. The court scheduled Bowling's sentencing hearing for a later date.

### C. The Sentencing Hearing

{¶ 13} At the sentencing hearing, Bowling presented several witnesses in mitigation. He also offered a statement in mitigation.

{¶ 14} The State presented arguments in aggravation. The State noted that Bowling's sexual conduct with the victim was not a "one-time incident" and had begun when the victim was 15 years old. The State also noted that the sexual conduct that Bowling pleaded to resulted in the birth of a child.

{¶ 15} At the conclusion of the sentencing hearing the court imposed a sentence of 60 months—that is, five years—in prison on Count Three.

{¶ 16} Bowling appeals, raising three assignments of error.

### II. Law and Analysis

### A. Voluntariness of Plea

{¶ 17} Bowling's first assignment of error states:

- 4 -

BOWLING'S PLEA WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT.

{¶ 18} In support of this assignment of error, Bowing argues that the trial court failed to advise him:

- (1) that a postrelease control violation could result in a prison sentence of up to nine months per violation, as required by Crim.R. 11(C)(2)(a);

- (2) that a guilty plea was a "complete" admission to the facts alleged by the State, as required by Crim.R. 11(C)(2)(b); and

- (3) that the court could proceed to sentencing just after Bowling entered his plea, as required by Crim.R. 11(C)(2)(b).

Bowling argues that because the trial court did not inform him of each of these items, his guilty plea was not knowingly, intelligently, and voluntarily made.

**1. Applicable Law**

{¶ 19} "A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision." *State v. Clark*, 2008-Ohio-3748, ¶ 25. Given the seriousness of such a decision, "'[w]hen a defendant enters a guilty plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.'" *State v. Hawkins*, 2023-Ohio-2915, ¶ 7 (12th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179. "'Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *Id*.

{¶ 20} "'A trial court's obligations in accepting a plea [is] depend[ent] upon the level of offense to which the defendant is pleading.'" (Bracketed text in original.) *State v. Muhire*, 2023-Ohio-1181, ¶ 11 (12th Dist.), quoting *State v. Jones*, 2007-Ohio-6093, ¶ 6. "Crim.R. 11(C) prescribes the procedure a trial court must follow in felony cases before

accepting a guilty or no contest plea." *State v. Martin*, 2019-Ohio-2792, ¶ 26 (12th Dist.). The rule "ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). This requires the trial court to notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c). *State v. Oliver*, 2021-Ohio-2543, ¶ 41 (12th Dist.). This also requires the trial court to make the necessary determinations and give the defendant the necessary warnings set forth in Crim.R. 11(C)(2)(a) and (b). *Id.*

{¶ 21} Specifically, Crim.R. 11(C)(2)(a), (b), and (c) provide:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 22} The Ohio Supreme Court has addressed a trial court's compliance with

Crim.R. 11(C) and how an appellate court should review a trial court's plea colloquy. *State v. Dangler*, 2020-Ohio-2765. In general, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. But there are two exceptions to this rule: (1) when the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, and (2) "a trial court's complete failure to comply with a portion of Crim.R. 11(C)." *Id.* at ¶ 14-15. Under either exception, the defendant is not required to show prejudice. *Id.* at ¶ 14-16.

### 2. Legal Analysis

{¶ 23} Bowling does not argue that the trial court failed to properly advise him of the constitutional trial right waivers under Crim.R. 11(C)(2)(c). Instead, Bowling argues that the court completely or partially failed to satisfy the requirements of Crim.R. 11(C)(2)(a) and (b). Bowling sets forth multiple arguments in this regard, and we will address them in turn.

### a. Failure to Inform of Maximum Penalty – Crim.R. 11(C)(2)(a)

{¶ 24} Bowling first argues that the trial court failed to inform him of the maximum penalty for Count Three prior to accepting his guilty plea, as it was required to do by Crim.R. 11(C)(2)(a). Specifically, Bowling contends that the trial court failed to inform him that if he violated the terms of postrelease control, the parole board could impose a new prison term of up to nine months on each postrelease control violation. In support, Bowling cites R.C. 2943.032, which provides:

> (A) Prior to accepting a guilty plea or a plea of no contest to an indictment, information, or complaint that charges a felony, *the court shall inform the defendant personally that*, if the defendant pleads guilty or no contest to the felony so charged

- 7 -

or any other felony, if the court imposes a prison term upon the defendant for the felony, and if the offender violates the conditions of a post-release control sanction imposed by the parole board upon the completion of the stated prison term, *the parole board may impose upon the offender a residential sanction that includes a new prison term of up to nine months, subject to a maximum cumulative prison term for all violations that does not exceed one-half of the definite prison term that is the stated prison term originally imposed upon the offender* or, with respect to a non-life felony indefinite prison term, one-half of the minimum prison term included as part of the stated non-life felony indefinite prison term originally imposed on the offender.

(Emphasis added.)

{¶ 25} We will refer to the R.C. 2943.032 mandatory notification, regarding the ability of the parole board to impose up to a nine-month prison term for each violation of the terms of postrelease control, as the "nine-month provision." Bowling argues that given the mandatory language of R.C. 2943.032, the trial court was required to inform him of the nine-month provision at the plea hearing. Bowling also argues that because postrelease control is part of a defendant's maximum sentence, the trial court was required to inform him of the nine-month provision to comply with Crim.R. 11(C)(2)(a).

{¶ 26} Under Crim.R. 11(C)(2)(a), before accepting a plea of guilty, the court must ensure that a defendant is entering a plea with an "understanding of the nature of the charges and of the maximum penalty involved . . . ."

{¶ 27} With regard to postrelease control, the court informed Bowling as follows:

[The Court]: Upon your release, you will be under supervision, what is called, post-release control for a maximum period of five years. If you violate the post-release control sanctions, the parole authority could return you to prison and require that you serve more time in prison up to one-half of your original sentence on one or more post-release control violations.

Do you understand that information?

- 8 -

Bowling: Yes, Your Honor.

{¶ 28} The trial court did not advise Bowling of the nine-month provision. That is, the court did not, under R.C. 2943.032, advise Bowling that the parole authority was limited to a sanction of nine months per postrelease control violation. But the court correctly advised Bowling that the maximum time he could receive for all postrelease control violations from the parole board was one-half his original sentence. R.C. 2943.032.

{¶ 29} We find that notwithstanding the failure of the trial court to advise Bowling as to the nine-month provision, the court did inform Bowling of the maximum penalty concerning postrelease control. There is no dispute that, during the plea hearing, the court repeatedly advised Bowling, and Bowling acknowledged, that his maximum prison sentence was 60 months. Thus, in conjunction with the postrelease control advisement the court provided Bowling—in which it stated that "the parole authority could return you to prison . . . up to one-half of your original sentence"—Bowling would have been aware that his *maximum* penalty for postrelease control violations would be 30 months in prison.

{¶ 30} Bowling cites no authority in support of the contention that by failing to advise him of the nine-month provision, the trial court failed to advise Bowling of the maximum penalty under Crim.R. 11(C)(2)(a). To the contrary, the authorities cited in the State's brief support the proposition that the failure to inform a defendant of the nine-month provision does not render a plea less than knowing, intelligent, and voluntary.

{¶ 31} For example, the Third District Court of Appeals upheld a plea where the trial court failed to advise the defendant of the nine-month provision (as set forth in R.C. 2967.28[F][3], the postrelease control statute) but properly advised the defendant that a

cumulative term could not exceed one-half of the defendant's prison term. *State v. Robinson*, 2021-Ohio-97, ¶ 16 (3d Dist.). The same result was reached by the court of appeals in *State v. Ebbing*, 2021-Ohio-865, ¶ 17 (2d Dist.).

{¶ 32} We agree with these authorities and find that the trial court complied with Crim.R. 11(C)(2)(a) by informing Bowling of the maximum penalty he could receive for postrelease control violations—that is, one-half of the definite prison term that is the stated prison term originally imposed on the offender. Therefore, we find no failure to comply with Crim.R. 11(C)(2)(a), whether completely or partially.

{¶ 33} But even if we found only partial compliance with Crim.R. 11(C)(2)(a), we would not find prejudice. The test for prejudice is whether the plea would have otherwise been made. *State v. Hawkins*, 2023-Ohio-2915, ¶ 12 (12th Dist.). "Prejudice must be established on the face of the record and not solely by virtue of challenging a plea on appeal." *Id*. at ¶ 12, citing *Dangler*, 2020-Ohio-2765 at ¶ 24.

{¶ 34} Bowling points to nothing in the record that would show that he was prejudiced by the court's failure to inform him of the nine-month provision at the plea hearing. Bowling asked no questions of the court regarding postrelease control. In fact, he asked no questions of the court whatsoever. And Bowling makes no argument articulating prejudice other than to argue that prejudice is evident in the mere fact that he was uninformed about the nine-month provision. But the record reflects that Bowling was in fact aware of the nine-month provision, or claimed to be. The nine-month provision was clearly stated in the plea form, which Bowling repeatedly acknowledged to the trial court that he had read and understood.

{¶ 35} Bowling does not argue that he would not have entered his guilty plea if he

had been advised of the nine-month provision at the plea hearing, or that he even would have had questions. Nothing in the record substantiates any hesitancy by Bowling to enter his plea. And there was good reason for this, as Bowling faced a potential sentence of 20 years in prison had he not accepted the plea agreement, proceeded to trial, and been found guilty. By all accounts, this plea was heavily in Bowling's favor and it defies logic that Bowling would have rejected the plea if he had been informed of the nine-month provision.

{¶ 36} Having found no error and (in the alternative) no prejudice under Crim.R. 11(C)(2)(a), there is one remaining question: what about R.C. 2943.032? We agree that R.C. 2943.032 required the trial court to advise Bowling of the nine-month provision at the plea hearing, and that the failure to advise him was error under that statute. Yet again, Bowling has pointed to no prejudice in the record that would substantiate reversing based on this error. *See* Crim.R. 52(A); App.R. 12(B); R.C. 2309.59. As a result, we can only find that the error in not complying with R.C. 2943.032 was harmless. Harmless error can be found where there is overwhelming evidence of guilt, or "'some other indicia that the error did not contribute to the conviction.'" *State v. Hamrick*, 2023-Ohio-117, ¶ 59, quoting *State v. Tucker*, 2012-Ohio-139, ¶ 17.

**b. Failure to Inform About Complete Admission of Guilt – Crim.R. 11(C)(2)(b)**

{¶ 37} Bowling next asserts that the court failed to tell him that a guilty plea is a complete admission of guilt and that this was a complete failure to comply with Crim.R. 11(C)(2)(b). Accordingly, Bowling asserts that he need not show prejudice. *Dangler*, 2020-Ohio-2765 at ¶ 15.

{¶ 38} As pertinent here, Crim.R. 11(C)(2)(b) provides that a trial court shall not

accept a guilty plea "without first addressing the defendant personally . . . and . . . [i]nforming the defendant of and determining that the defendant understands the effect of the plea of guilty . . . ." In turn, Crim.R. 11(B)(1) sets forth the effect of a guilty plea and provides that a "plea of guilty is a complete admission of the defendant's guilt."

{¶ 39} Upon reviewing the plea colloquy, we find that the trial court did not completely fail to comply with Crim.R. 11(C)(2)(b). It is true that the trial court did not use the exact phrasing of Crim.R. 11(B)(1) and inform Bowling that his guilty plea was a "complete" admission of guilt. But as the Ohio Supreme Court has held,

> [the] focus in reviewing pleas has not been on whether the trial judge has '[incanted] the precise verbiage' of the rule . . . but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea.

(Citations omitted.) (Internally quoted bracketed text in original.) *Dangler*, 2020-Ohio-2765 at ¶ 12. Here, the trial court asked Bowling and his attorneys if the court could consider the facts as alleged in the Bill of Particulars as a statement of facts with respect to the plea to Count Three. Bowling's attorneys stated that Bowling would waive the reading of the Bill of Particulars and accept the court's findings in the Bill of Particulars. The court then asked Bowling if he needed more time to speak to his attorneys. Bowling stated he did not. And Bowling made no comments whatsoever at the hearing indicating any assertions of innocence. The Ohio Supreme Court has held that "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." *State v. Griggs*, 2004-Ohio-4415, ¶ 19. *Accord State v. Fontanez*, 2024-Ohio-1590, ¶ 18-19 (8th Dist.); *State v. Blair*, 2022-Ohio-2572, ¶12-15 (5th Dist.); *State v. Krieger*, 2020-Ohio-6964, ¶ 19 (7th Dist.).

**{¶ 40}** We therefore conclude that the totality of circumstances and the dialogue between the court and Bowling indicate that the trial court sufficiently informed Bowling that a guilty plea was a complete admission of guilt, and could determine that Bowling understood this to be the case. We find no merit to the argument that Bowling's plea was less than knowing, intelligent, and voluntary based on the lack of an explicit discussion of the "complete admission of guilt" language.

### c. Failure to Inform About Proceeding with Sentencing – Crim.R. 11(C)(2)(b)

**{¶ 41}** Crim.R. 11(C)(2)(b) provides that the sentencing court must inform the defendant, and determine that the defendant understands, that "the court, upon acceptance of the plea, may proceed with judgment and sentence." Bowling contends that the trial court failed to do so, and as a result his plea was less than knowing, voluntary, and intelligent. In so arguing, Bowling appears to imply that, after the court failed to tell him that it could immediately sentence him, it then prejudiced him by immediately sentencing him. But the record shows that the court did *not* immediately sentence Bowling, and instead ordered a presentence-investigative report, ordered Bowling evaluated for the CCC sexual offender program, and set sentencing for a later date.

**{¶ 42}** At any rate, the record reflects that the court did not expressly state to Bowling that it could immediately proceed to judgment and sentence. That said, the court informed Bowling at the plea hearing that it would have him evaluated for the CCC sex offender program:

> The Court: I told your attorneys that, if you were -- pled guilty to this offense, I would have you evaluated for the CCC sex offender program, but I made no promises.
>
> The Defendant: Yes, Your Honor.

{¶ 43} The implication of the court's comment was that while it had agreed with Bowling's attorneys not to sentence him immediately in lieu of having him evaluated for this sex offender program, the court had "made no promises" and could elect to sentence him immediately.

{¶ 44} At worst, this was a partial failure to inform Bowling of a provision under Crim.R. 11(C)(2)(b). Assuming a partial failure to comply, we can discern no prejudice on the record, nor does Bowling articulate prejudice. He was not sentenced immediately following his plea. We find no merit to the argument that Bowling's plea was less than knowing, intelligent, and voluntary based on the trial court's failure to explicitly tell him that it could proceed to sentencing immediately upon his entry of a guilty plea.

{¶ 45} For the foregoing reasons, we overrule Bowling's first assignment of error.

**B. Ineffective Assistance of Counsel**

{¶ 46} Bowling's second assignment of error states:

BOWLING'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED.

{¶ 47} Bowling asserts that his trial counsel provided deficient performance, which resulted in prejudice, in three ways. We will address each argument in turn after addressing the applicable standard of review.

**1. Law Applicable to Ineffective Assistance Claims**

{¶ 48} To prevail on an ineffective assistance of counsel claim, Bowling must show his defense counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th Dist.); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice,

Bowling must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. We strongly presume that defense counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 2014-Ohio-4625, ¶ 7 (12th Dist.). It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland* at 689.

## 2. Analysis

### a. Failure to Object at Plea Hearing

{¶ 49} For his first ineffective-assistance-of-counsel argument, and building on his various arguments in support of his first assignment of error, Bowling contends that his trial counsel "did not ensure Bowling was made aware during the plea colloquy of the possible nine-month sentence if he violates the terms of post-release control."  For the reasons described above, the trial court's plea colloquy was compliant with Crim.R. 11(C)(2)(a) and therefore counsel could not have provided deficient performance for failing to object to the plea colloquy on these grounds. Furthermore, Bowling has not pointed to any prejudice on the record. We find no merit to this argument.

### b. "Doubly Illegal" Comment

{¶ 50} During sentencing on the single sexual battery count to which Bowling pleaded guilty, the trial court referenced another count in the indictment which alleged that Bowling had engaged in sexual conduct with the victim when she was 15 years old. The trial court then stated that Bowling's actions were "doubly illegal" because of the

victim's age. Bowling argues that his trial counsel provided ineffective assistance by failing to object to this "doubly illegal" remark.

{¶ 51} The court's "doubly illegal" comment was flippant, but the record reflects that immediately after making the comment, the court clarified that the comment was a "joke" and clarified that "there is no such thing as doubly illegal." There is no evidence in the record, and Bowling points to none, indicating that the court's single "doubly illegal" comment had any bearing on the sentence imposed by the court. Furthermore, to the extent Bowling is arguing that the court impermissibly considered unproven offenses in sentencing, for reasons that we will discuss in response to the third assignment of error, there was no error. We do not find that Bowling's defense counsel was deficient for failing to object to this comment.

### c. Victim's Alleged Sexual Activity

{¶ 52} At sentencing, the prosecutor stated that Bowling had forced the victim to leave the family home. In response, Bowling's defense counsel stated that the prosecutor's characterization was false, and that the defense had information that the victim had moved in with a relative and had a second child with that relative. The State objected, and the court sustained the objection and struck defense counsel's comment. Bowling now argues that defense counsel's comment referred to the victim's sexual activity and was inflammatory, and thus constituted ineffective assistance.

{¶ 53} Assuming that the comment by defense counsel was inappropriate, Bowling has not established prejudice. The court struck the comment and we presume that the court did not consider it at sentencing. *State v. Addison*, 2004-Ohio-5154, ¶ 10 (10th Dist.) (holding that a trial court is presumed to have considered only the relevant, material and

competent evidence). Bowling points to no portion of the record that would support the claim that the court considered evidence that it struck from the record in determining his sentence. As such, Bowling cannot demonstrate prejudice and this argument is meritless.

{¶ 54} For the foregoing reasons, we overrule Bowling's second assignment of error.

### C. Sentencing

{¶ 55} Bowling's third assignment of error states:

BOWLING'S SENTENCE IS CONTRARY TO LAW BECAUSE THE RECORD DOES NOT SUPPORT THE IMPOSITION OF THE MAXIMUM SENTENCE.

{¶ 56} In support of this assignment of error, Bowling argues that the record did not support the trial court's imposition of a maximum sentence. Bowling contends that the court ignored mitigating factors and improperly considered conduct referenced in the counts of the indictment to which he did not plead guilty.

{¶ 57} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 2021-Ohio-164, ¶ 6 (12th Dist.). As applicable here, R.C. 2953.08(G)(2) provides:

The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 58} A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles, purposes, and factors set forth in R.C. 2929.11 and

- 17 -

2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range. *State v. Jennings*, 2024-Ohio-383, ¶ 31 (12th Dist.).

{¶ 59} Upon reviewing the record, we find that Bowling's sentence is not contrary to law. Bowling's 60-month prison term was within the permissible range for his third-degree felony conviction. R.C. 2929.14(A)(3)(a). The trial court properly imposed postrelease control sanctions, addressed the purposes and principles of sentencing under R.C. 2929.11, and considered the seriousness and recidivism factors under R.C. 2929.12 at the sentencing hearing and within its sentencing entry.

{¶ 60} Bowling argues that the court impermissibly considered unproven criminal acts. In *State v. Bittner*, 2019-Ohio-3834, ¶ 23 (12th Dist.) we held that the rules of evidence do not apply in sentencing hearings. *Id*. Accordingly, courts may consider hearsay evidence, evidence of an offender's criminal history, facts concerning dismissed charges, and even offenses for which charges were not filed, but were addressed in a presentence investigative report. *Id*.

{¶ 61} "When a defendant's convictions result from a plea bargain, the plea bargain 'does not preclude the trial court's consideration of the underlying facts' in determining the appropriate sentence to impose." *Id*., quoting *State v. Clayton*, 2014-Ohio-112, ¶ 18 (8th Dist.). "Thus, charges that were dismissed as part of a plea agreement and the facts related to those charges are valid sentencing considerations." *Id*. Thus, there was no error in the trial court considering the facts underlying Bowling's plea and there is no evidence that the court solely based its sentence on consideration of these facts.

{¶ 62} In his remaining arguments, Bowling essentially asks this court to reweigh

the R.C. 2929.11 and 2929.12 purposes, principles, and factors in his favor and render a lesser sentence. Yet R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

{¶ 63} Based upon our review of the sentencing hearing, the court properly considered all relevant factors and used appropriate discretion in imposing sentence. And Bowling's sentence was not contrary to law.

{¶ 64} We overrule Bowling's third assignment of error.

### III. Conclusion

{¶ 65} The record establishes that Bowling entered a guilty plea knowingly, voluntarily, and intelligently. Bowling has not established that his trial counsel provided defective performance or that any prejudice resulted. And Bowling's sentence was not contrary to law.

{¶ 66} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Matthew R. Byrne, Presiding Judge


/s/ Robert A. Hendrickson, Judge


/s/ Robin N. Piper, Judge